```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JASON W. HENNINGER,

                        Plaintiff,        12-CV-0758(MAT)

        v.                                **DECISION**
                                          **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                        Defendant.
_____
```

## INTRODUCTION

Jason W. Henninger ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB").

Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##11, 12.

## BACKGROUND

Plaintiff filed a DIB application on September 16, 2008, alleging disability beginning April 8, 2004, on the basis of dominant right-hand impairment and depression. T. 112-13. His initial application was denied on March 30, 2009, and a hearing was requested before an Administrative Law Judge ("ALJ"). T. 68-71. Plaintiff appeared with counsel before ALJ Robert T. Harvey in Buffalo, New York, on October 14, 2010. The ALJ also heard testimony from vocational expert Jay Steinbrenner. T. 33-63.

In applying the familiar five-step sequential analysis as contained in the administrative regulations promulgated by the Social Security Administration, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 8, 2004; (2) he had the severe impairments of obesity, right-hand median nerve dysfunction, and right thumb digital nerve dysfunction; (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R., Part 404, Subpart P, Appx. 1, and that he retained the residual functional capacity ("RFC") for medium work with limitations in occasionally feeling with the dominant right hand and not working in areas that were cold and damp; and (4) Plaintiff was able to return to his past work as a shipping clerk and forklift operator. The ALJ then concluded that Plaintiff was not disabled. T. 19-32.

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 15, 2012. T. 1-6. This action followed. Dkt.#1.

The Commissioner moves for judgment on the pleadings on the grounds that substantial evidence supports the Commissioner's final decision that Plaintiff was not disabled. Comm'r Mem. (Dkt. #11-1) 18-24. Plaintiff has filed a cross-motion alleging that the ALJ improperly dismissed the opinions of Plaintiff's treating physician

and that the ALJ failed to make a proper credibility determination. Pl. Mem. (Dkt. #13) 21-25.

For the following reasons, the Commissioner's motion is granted, and the Plaintiff's cross-motion is denied.

## DISCUSSION

### I. Scope of Review

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

### II. Medical Evidence

#### A. Treating Physicians

Plaintiff lacerated his right hand on April 8, 2004, while playing a video game. He immediately underwent surgery to have the laceration repaired, and an x-ray taken of his thumb at the emergency room was normal. T. 221-24, 276.

On April 14, Plaintiff saw Dr. A. Marc Tetro for evaluation of a possible nerve injury to the right thumb. Id. Dr. Tetro recommended exploratory surgery, which was completed the following day. T. 221-4, 229. Plaintiff followed-up with Dr. Tetro 11 days later. Treatment notes indicate that Plaintiff's radial digital

nerve was non-repairable, and that he was doing well with postoperative care and had some pain controlled with narcotic analgesics and Ibuprofen. T. 229-30. Dr. Tetro opined that Plaintiff would be able to work without the use of the right hand, however, if there was no such work available, he would be under a total, temporary disability. T. 230. At the next follow-up dated May 26, 2004, Plaintiff's examination of the right hand indicated that it was "healing well." T. 232. Dr. Tetro recommended outpatient physical therapy and for Plaintiff to "try and return to work." Id.

Plaintiff underwent and completed outpatient physical therapy and outpatient occupational therapy in June and July of 2004. T. 190-93.

A nerve transfer with reconstruction was performed on Plaintiff's right thumb on September 23, 2004. T. 242-44. The following month, Dr. Tetro opined that Plaintiff was temporarily, totally disabled. T. 240. By April, 2005, Plaintiff's hand was "relatively well healed" with diminished motion, but Plaintiff was making "significant progress in improvement" and "responded well to outpatient hand therapy regaining significant degree of motion and function with his hand and thumb." T. 218-19. A follow-up in October, 2005 was unchanged, and Plaintiff could not return to his pre-injury form of employment. T. 216.

In April, 2007, Dr. Tetro noted that Plaintiff had little use of the radial aspect of his right thumb. T. 206-07. Plaintiff avoided using his right upper extremity for simple daily activities. T. 207. His recovery had "reached a plateau," and he appeared somewhat despondent and depressed. T. 207-08. Dr. Tetro diagnosed right upper extremity pain syndrome–possible chronic regional pain syndrome. T. 207-08.

Upon referral by Dr. Tetro, Plaintiff began seeing pain specialist Dr. Eugene Gosy in May, 2006, and continued under his care through December, 2009. Treatment notes from these visits were largely unchanged over the course of nearly three years. Plaintiff repeatedly told Dr. Gosy that he was looking for work. He had normal gait, negative straight leg raises, and full upper and lower extremity strength upon examination, except for right thumb weakness. During this treatment period, Plaintiff was treated with various prescription medications, including Licoderm patches, Neurontin, Keppra, hydrocodone, and Ambien, among others. He continued to complain of right hand pain and depression. Diagnoses were neuralgia, neuritis, and radiculitis, unspecified, and clinical depression. T. 280-82, 285-86, 287-90, 294-95, 299-300, 301-02, 308-09, 360, 362, 393. Plaintiff's depression was also treated with prescription medication. T. 283.

On March 8, 2007, Dr. Gosy applied a sleeve to Plaintiff's right hand for protection. T. 306. In June, Dr. Gosy's examination

results were unchanged except for mild swelling in Plaintiff's thenar section. T. 309.

On August 7, 2007, Dr. Gosy noted that Plaintiff had very few "low days," denied suicidal ideation, and was in remission with medication, which included Wellbutrin and Cymbalta. T. 283.

In June, 2008, Dr. Gosy noted that Plaintiff's medications were serving him well, and that the pain control was greatly improved. T. 292. The following month, Dr. Gosy tapered Plaintiff off of Cymbalta. T. 294. In December, the doctor noted that Plaintiff was doing "fairly very well," with the combination of Percocet, Ambien, and Wellbutrin. T. 366. He opined that Plaintiff was fifty percent disabled. T. 367.

In March, 2009, Dr. Gosy noted that Plaintiff's neuropathic pain in the right upper extremity associated with clinical depression was controlled. T. 365. In December, Plaintiff had done well on his medications, continued to have full upper extremity strength with mild swelling of the dorsal surface of the extremity. T. 392-93. Dr. Gosy assessed controlled clinical depression, controlled chronic pain syndrome, and reflex sympathetic dystrophy. T. 393.

 **B. Consultative Examinations**

On February 25, 2009, Plaintiff underwent a consultative psychiatric evaluation by Thomas Ryan, Ph.D. T. 316-19. He reported seeing a pain management specialist since 2005, and stated that his

medications were Lasix, naproxen, potassium, Lunesta, and Wellbutrin. T. 316. He claimed to have sleep apnea and used a continuous positive airway pressure ("CPAP") machine, but usually took it off due to discomfort. Id. Plaintiff told Dr. Ryan that he was depressed, irritable, and socially withdrawn, but did not have memory, concentration, or attention problems. Id. The mental status examination was unremarkable, with average cognitive functioning and fair insight and judgment. T. 318. He was able to care for his daily needs, but his wife did most of the household chores. He visited with friends, liked to read, go for walks, watch television, and listen to the radio. Dr. Ryan opined that Plaintiff had no significant limitations in any functional area, with a mild-to-moderate limitation in his ability to deal with stress. Diagnoses was adjustment disorder with depressed mood, and individual counseling for support was advised. T. 318-19.

Plaintiff was also consultatively examined by Jacob Piazza, M.D. T. 320-24. He complained of multiple joint pain and sleep apnea that was helped somewhat by a CPAP machine. He stated that he did not do household chores, but cared for his personal needs. T. 320-21. Plaintiff's physical examination yielded normal results with a sensory deficit in the palmar aspect of the right index finger. T. 321-22. His hands had full grip strength, and he could tie his shoes without difficulty, but he had a moderate difficulty buttoning a button with his right hand, and zipped a zipper with

7

his left hand. Id. Dr. Piazza diagnosed depression, bilateral ankle pain secondary to old ligamentous injury, decreased sensation of the right hand secondary to nerve damage, left shoulder pain, depression, and obstructive sleep apnea. Id. He opined that Plaintiff did not have much difficulty walking and would have mild limitations for prolonged standing or walking due to a complaint of ankle difficulties. Id. Plaintiff's right hand had moderately decreased fine motor activity, but his proximal muscle strength was good in all four extremities. Id.

State Agency review physician V. Yu, M.D., reviewed the record on March 12, 2009, and concluded that Plaintiff could lift 20 pounds on occasion and 10 pounds frequently, walk for 6 hours per 8-hour workday, with no frequent repetitive fine manipulations with the right hand. T. 326. Reviewing psychiatrist C. Butensky opined that Plaintiff had mild restrictions in activities of daily living, maintaining social functioning, and concentration, persistence, or pace, and that his mental impairment was non-severe. T. 330, 340, 342.

### III. **Non-Medical Evidence**

Plaintiff was born in 1974, has a high-school education, and is right-handed. T. 37. He testified that he was married and lived with his wife. At the time of the hearing, he was working full-time as a forklift operator. T. 38. In September, 2004, Plaintiff injured his right thumb, and had constant right arm and hand pain

with weakness. T. 42-43. He told the ALJ that he did not have feeling in half of the right thumb, and had pain all over his body, including his right ankle. He stated that he had cellulitis of the neck, which was resolved, and nasal surgery. T. 45. Regarding his depression, Plaintiff stated that he had a "slight amount" of difficulty, and took Cymbalta, which controlled it. T. 45-46. Plaintiff stated that he had taken 10 sick days since he started his job due to flare-ups of pain in his right hand. T. 54. However, over the past 6 months his condition was the "best" it had been since he injured his hand in 2004. T. 55-56.

From 2001 to 2004 Plaintiff was employed as a shipping clerk, which required him to lift between 30 and 50 pounds and stand or walk most of the day. As a forklift operator, Plaintiff lifted up to 30 pounds. T. 47.

With respect to his daily activities, Plaintiff testified that he helped to clean, unload the dishwasher, do laundry, and vacuum, he took out the trash, cut grass, watched television, went for walks, drove a car, and could bathe and dress himself. He did not have hobbies, go shopping, or go to church. T. 49.

Plaintiff also testified that he had trouble sleeping and could not stand for longer than an hour. He did not have problems sitting, could push and pull, stoop, squat, and climb. T. 50-51. Damp and cold weather bothered him, and he could not pick up objects with his right hand, but had gotten better with zippers,

jars, and buttons. T. 51. He could lift about 50 pounds. T. 50. Plaintiff took medication and used ice and heating pads for his pain. T. 52.

Vocational expert Jay Steinbrenner characterized Plaintiff's past work as a shipping clerk and forklift operator as medium in exertional nature. T. 59-60. He was not exposed to cold or dampness at those jobs. T. 60. A hypothetical individual who could lift or carry, push or pull 50 pounds occasionally and 25 pounds frequently; could sit for 2 hours in an 8-hour workday; and had occasional limitations in the ability to feel with the right hand and could not be exposed to dampness could perform Plaintiff's past relevant work. Id.

**IV. The Decision of the Commissioner that Plaintiff was not disabled was supported by Substantial Evidence.**

**A. Treating Source Opinion**

Plaintiff contends that the ALJ improperly dismissed the opinion of Dr. Tetro that Plaintiff would not be able to return to work. Pl. Mem. 21-22.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). However, "the less consistent that opinion is with the record as a whole, the less weight it will be given."

10

Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999), citing 20 C.F.R. § 404.1527(d)(4).

The Commissioner need not grant controlling weight to a treating physician's opinion to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. See 20 C.F.R. § 404.1527(d)(1); Snell, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Because Dr. Tetro's conclusion was a statement as to the ultimate issue of disability, it was not a medical opinion and therefore was not entitled to special significance under the treating physician rule. See 20 C.F.R. § 416.927(d)(1)-(3).

Moreover, the ALJ discussed Dr. Tetro's reports and findings, which he relied upon in determining Plaintiff's RFC. Those reports were discussed in conjunction with the treatment notes from Plaintiff's pain management specialist, the objective test results, and the findings of the consultative examiners, all of which were largely consistent with one another. T. 26-27. The aggregate medical evidence supported a finding of a right-hand impairment with occasional limitations in the ability to feel with that hand and restrictions with respect to coldness and dampness. T. 25. Because substantial evidence supported the ALJ's finding, any purported error arising out his failure to assign a weight to Dr. Tetro's opinion of disability would be harmless. See Ryan v.

11

Astrue, 650 F.Supp.2d 207, 217 (N.D.N.Y. 2009) ("[C]ourts have found harmless error where the ALJ failed to afford weight to a treating physician when an analysis of weight by the ALJ would not have affected the outcome."); see Jones v. Barnhart, No. 02 Civ. 0791, 2003 WL 941722, at *10 (S.D.N.Y. Mar.7, 2003) (finding harmless error in the ALJ's failure to grant weight to Plaintiff's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them").

For these reasons, remand is not warranted based on the ALJ's evaluation of Dr. Tetro's medical statement.

**B.   Credibility Assessment**

Plaintiff also challenges the ALJ's credibility determination, alleging that he misstated the evidence and failed to mention Plaintiff's consistent work record in the years prior to the onset of disability. T. 24.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R.

§ 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling 96-7p, (July 2, 1996), 1996 WL 374186, at *7. It is well within the Commissioner's discretion to evaluate the credibility of a plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

In his decision, the ALJ found that Plaintiff's specific allegations were not credible when compared with the record. T. 27. Among other things, the ALJ cited Plaintiff's significant activities of daily living, which included cooking, cleaning, doing laundry, vacuuming, taking out the trash, doing yard work, cutting grass, driving, and taking care of his personal hygiene, and noted that these activities were inconsistent with Plaintiff's allegations of disability. T. 27. Plaintiff takes issue with the fact that the ALJ stated that Plaintiff could "cook and clean,"

13

which he claims is inaccurate. Pl. Mem. 23-24. An examination of the hearing testimony reveals that Plaintiff "had been" cleaning at home and did not cook. T. 48. In his Activities of Daily Living Questionnaire, Plaintiff reported that his wife did "most" of the cooking, that he did not use a stove-top with an open flame due to the loss of feeling in his hand, and did not perform household and/or yard work. T. 147. The Court therefore agrees that the ALJ mis-stated Plaintiff's ability to perform these activities during the relevant period. Nonetheless, the evidence as a whole, which includes the balance of Plaintiff's reported daily activities, does not support his allegations that his right-hand impairment was disabling. The ALJ's inaccuracy in this regard does not amount to legal error. See Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.")

With respect to the second part of Plaintiff's credibility challenge, it is true that a steady and lengthy work history can bolster a claimant's credibility regarding intensity, persistence and limiting effects of her symptoms. See 20 C.F.R. § 404.1529(c)(3); see also Schaal, 134 F.3d at 502 ("a good work history may be deemed probative of credibility"). The fact that the ALJ did not mention Plaintiff's work history does not mean,

however, that he did not consider it. Where, as here, there is substantial evidence to support a finding of no disability, the ALJ's mere failure to mention or discuss work history cannot form the basis for reversing a subjective credibility determination. See Wavercak v. Astrue, 420 Fed. Appx. 91, 94 (2d Cir. 2011) (summary order) ("That Wavercak's good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination.").

The ALJ applied the correct legal principles in assessing Plaintiff's credibility, and his finding was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.#11) is granted, and Plaintiff's cross-motion for judgment on the pleadings (Dkt.#12) is denied. The ALJ's finding that Plaintiff was not disabled was supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         May 19, 2015